The central question to be decided here is whether and to what extent the common English noun entrepreneur, which is without synonym as already noted by this Court, can be appropriated for commercial use by a business enterprise, and how far does the associated right to exclude others go? Your colleagues on the panel who heard the earlier appeal related to this case, Judges Fletcher, Nelson, and Berzin, have already determined that EMI, the publisher of Entrepreneur Magazine, cannot appropriate the word entrepreneur. Rather, trademark law allows EMI only the exclusive right to use the trademark entrepreneur to identify the products described in its registration. Central to this appeal are the issues of mandate, law of the case, fair use, and to some degree the standard of review. Mr. Peterson, that's where I have a little difficulty. I don't understand why law of the case or the mandate have anything to do with it, and fair use was waived. All we did previously was to say they're triable issues of fact on the record as it existed and send it back to be tried. Now we've got a trial record, which is a quite different animal. So I'm not, I just don't quite get why rules of mandate or law of the case have anything much to do with this. Okay, well I'll address that question, Judge Reimer. It's an important question in the case, and it's really the central one in some respects. Your colleagues on the prior panel remanded this case with the exception of the issue of infringement regarding the printed publication. Right. And they, your colleagues also gave a lengthy reasoned opinion, which was a fairly exhaustive analysis of the case, the legal issues, some of the factual issues. With respect to each one of which, the Court very carefully said on this record. Well, I respectfully disagree with that. With respect to some of the issues, that caveat was included. With respect to many important issues, that caveat was not included. For example. But if that had been the case, they would have just decided it was a matter of law in your favor, right? Well, and that's precisely what we believe the prior panel did. No, it could not have because it remanded the case for trial. Well, with respect to certain issues, Judge Nelson, or excuse me, Judge Thomas, I beg your pardon. He's a panel all by himself. I'm not a famous mark. Can we just go on? The question that leaps off the pages of the prior opinion to me is, why would the Court, the prior panel, go to such lengths if its real message was only that, you know, there are tribal issues of fact that really preclude the grant of summary judgment here? Because what the prior panel did is quite different than that. And typically, when I read opinions reversing summary judgment on the basis that there are tribal issues, that's about all that it has said in the opinion. And the case gets remanded for the tribal issue. Sometimes some people take longer to say the same thing than others. But, I mean, it doesn't change the bottom line. Well, but I believe it does, Your Honor, because What's your best case that says that? I mean, I understand your argument from you're drawing implications from the prior. But if you're really saying that this panel is prohibited from doing anything different from the other panel, because they made judgments as a matter of law on all these issues, you better have a pretty good case that says that. I'm not saying that this panel can't do anything different than the prior panel. You're saying the district court couldn't? You're saying we couldn't? Law of the case is the law of the case? Well, what I'm saying is this panel has to review, and I believe under an arguably mixed standard of review, but predominantly under the abuse of discretion standard, this panel has to review what the trial court did in light of the analytical directives that were contained in the prior published opinion. And what the trial court did with respect to the remedy, and this is where I think the best indication is that the prior panel had in mind not remanding the entirety of the case to be tried de novo, okay? Well, but that, after applying the sleek craft analysis, we agree with the district court's ultimate finding of likelihood of confusion as a matter of law only as to the use of the mark entrepreneur illustrated on the cover of the printed publication. We therefore reverse the grand summary judgment and remand except as to that issue. That's a mandate. Except as to that issue. And what the prior panel did, Your Honors, went further and usurped the remedy. In other words, the prior panel didn't just affirm the finding of infringement with respect to the printed publication. The prior panel said, here's what you do with it. We affirm the finding of likelihood of confusion and infringement on the printed publication, but here's what you, the trial court, are to do with that conclusion. And that's where I think the biggest sign is that your colleagues on the prior panel had something different in mind than what EMI is arguing here. Because they did not only took the time and effort to go through all eight of the sleek factors, but took the time and effort to articulate analytical directives as acute to the trial judge, and then usurped the remedy with respect to the printed publication. So if you're left without, if we disagree with you, do you lose the case? Disagree with you in terms of the effect of the prior decision? Are you conceding that that's the linchpin of this appeal, that your appeal depends upon that? No. I don't for this reason, because, well, the question remains, did the trial court on trial, on remand, follow the analytical directives of the trial court? And you're saying, I guess, set that aside. If this panel believes that there were no mandates. I'm just suggesting that maybe you ought to spend your time arguing the merits of it, because if you're right, you're right on the merits. But if your case depends upon the finding of the mandatory adherence to the other panel's conclusions, in your view, then that's a different matter. Well, I think that the issue of adherence to some aspect of the prior published opinion is. Well, let me pose a somewhat different question based upon the prior opinion itself. It refers to evidence on the one hand and on the other hand. Why isn't that just by definition an indication that the district court can't have clearly erred in making fact findings that it did? Our opinion recognizes facts on both sides. It just said they couldn't be weighed as a matter of summary judgment, as a matter of law. But it recognized arguments on both sides and sent it back. The district court decided them. Well, this gets me a little bit back into analytical directives. The easy, I guess, issue in the Sleekcraft analysis is strength of the mark. Your colleagues on the prior panel ruled that this mark is weak, descriptive. Well, that's what it said. They say, quote, At trial, it will have the opportunity to prove its mark is stronger than it appears. At trial. And then district court held the extensive advertising and public recognition in the past 25 years have established the plaintiff's mark as a strong mark in the industry. So what do we make of that? The prior panel also says, Your Honor. Isn't it your job to show that that conclusion was clearly erroneous? Well, that gets us into the standard of review. Or abuse. I mean, whatever. One or both. But, yes, I think the predominant standard is abuse. All right. Well, explain to me, then, why you think the district court got it wrong on the strength of the mark. Well, because the prior panel ruled that the mark was weak for a number of reasons, starting with its accommodation. The longer you talk, the longer you lose me, too. I mean, I see this as a simple question of explaining why its summary judgment wasn't appropriate in this case. And sent it back, you've got to have a trial. So all the factors that aren't enough for summary judgment certainly could be enough for the trial. And here you had a trial. The judge arrived at certain conclusions. Well, on the, for example, Judge Trott, on the strength of the mark issue, the prior panel said, the prior panel considered EMI's circulation, the circulation of the mark. Those were both addressed in the Lozanski declaration that was before the court on summary judgment. The passage read a moment ago by Judge Thomas indicated that EMI would have an opportunity at trial to show greater strength. That left only one way to accomplish that, and that was to show public recognition or consumer association with the mark. And there was no evidence presented at trial on that issue. Well, your argument seems to be that the summary judgment should have been granted in your favor after the first panel decision. No, because the Well, you're saying you can't have, as a matter of law, you couldn't find against me. No, that's not correct, Judge Trott. The reason is because the prior panel ruled that there was infringement. And they ruled there was infringement based on, among other things, evidence of Smith's intent to confuse and evidence of actual confusion to some degree. Now, no matter how I might spin that, I don't think I could spin that as a ruling in his favor. All I'm saying is that the prior panel said we're not ruling in his favor, but the remedy needs to be carefully crafted and the sleek craft factors applied with the utmost caution in mind because, excuse me, the mark is a weak mark inherently, and because it's a common English noun that needs to be used and can be used under the doctrine of fair use by others in the marketplace, including Smith. So the message that I think speaks volumes from the prior panel is that the prior panel said, okay, we have evidence of intent, we have evidence of actual confusion, and even with that, we think that the remedy needs to be thoughtfully and carefully fashioned to allow Smith to use entrepreneur illustrated in a way that avoids likelihood of confusion. And that is very harmonious with the prior panel's ruling that entrepreneur could not usurp the word entrepreneur. So what do you think the prior panel's ruling required the district court to do on remand? Number one, fashion a remedy that's carefully crafted to allow for fair use of the common English word entrepreneur. I don't understand where this fair use thing comes into the equation. I don't either. Okay. Well, I can point you to page 1148, Judge Reimer, of the prior published opinion where your colleague said, this approach takes into account the fact that consumers may well recognize that Smith uses terms that include the word entrepreneur for what the word means, not because of an association with entrepreneur magazine. A sliding scale is therefore a logical way to connect relatedness of products. They go on to say, while the public and the trademark owner have an interest in preventing consumer confusion, there is also a broad societal interest in preserving common useful words for the public domain. We do not want to prevent the commercial use of a descriptive word, excuse me, of descriptive words to name products, as straightforward names are often the most useful identifiers. An absolute measure of relatedness and contrast would discourage the use of descriptive words and marks. So where's the words fair use in all that? Well, the words fair use are not explicitly used, but as we pointed out they're not only not explicitly used, they're not used at all. Well, neither does the statute use those words, Judge Trott. If you look at the statute, and we've briefed this. Well, neither did the pretrial order or your approach in the trial court. Right. And that was our the point we've made is that you don't have to invoke the words fair use to invoke the doctrine of fair use. And it's obvious to me, without using those two words fair use, that the prior panel is addressing just that, the fair use of the word in the English language to describe whatever it is being addressed to in language as opposed to using it as it is used as a trademark by Entrepreneur Magazine. So the other provision that I would point to is in the conclusion section on the last page of the published opinion, the prior panel said, although EMI has the exclusive right to use the trademark Entrepreneur to identify the products described in its registration, trademark law does not allow EMI to appropriate the word Entrepreneur for its exclusive use. The descriptive nature and common necessary uses of the word Entrepreneur require that courts exercise caution in extending the scope of protection to which the mark is entitled. And we have applied the sleek craft factors with that caution in mind, and on remand the district court should do so as well. Okay. Where does that say, then, the words that you added, that the district court must carefully fashion a remedy in line with that? I mean, that's surplusage on your part. Well, I think it's inherent in the statement that I just read, Your Honor, where we have applied the sleek craft factors with that caution in mind, and on remand the district court should do so as well. And right above that, your colleagues on the prior panel were saying that you can't have a situation where a trademark owner is removing a word from the English language. You combine that with the remedy that the prior panel articulated, which they did not have to. I mean, that's another thing that speaks loudly to me. The prior panel did not have to fashion any remedy at all. I mean, this is — Well, you had a prior panel that was enthused about your position. I'm sorry? You had a prior panel that was enthused about your position. I can understand why you're enthused about their opinion. But I think the problem here, I just don't see how it handcuffed either the district court or us. And so we have to examine it on a different — with a different standard of review. I mean, the inferences draw to your favor on summary judgment. It's a very different review. So I think you're better off focusing on what the district court did here and arguing why the district court was wrong under our standard of review, which goes the other way. It's very deferential at this point. Well, one of the things that I believe the district court did wrong is the district court concluded that this trademark is a strong mark entitled to the utmost protection. The other thing the district court did was enjoin Smith from using the word entrepreneur. Specifically, the prohibition articulated in the trial court was he can't use any trademark confusingly similar to entrepreneur, including entrepreneur illustrated, entrepreneur PR, entrepreneur PR.com, and entrepreneur. And so, you know, the fact that the trial judge enjoined use of the word, I think, not only doesn't it harmonize at all with the message from the prior panel, it doesn't harmonize with fair use generally, that you would enjoin someone from using the word. At trial, EMI will have the opportunity to prove that its mark is stronger than it currently appears, citing the panel. And then the district court says plaintiff has done so. Well, elsewhere in the prior opinion, Your Honor, they state that — You're going to go down with that ship. Go ahead. I mean, if you can't read what the panel is saying, be our guest. All right. I mean, here it is. It says, at trial, EMI will have the opportunity to prove the mark is stronger than it currently appears. And then the judge plaintiff has done so. What do we do with that? Well, the prior panel had evidence of advertising and circulation. Right. And you put that on at trial, right? No, that was in summary judgment. That was already — I know, but I mean, you put that on a defensive trial, I assume, right? Yes. And there was no evidence at all of public recognition or consumer association of the mark. And so if this is to be reviewed — There was a lot of testimony from people that said we were actually confused by this, to sum up what they said. Right. But that's a separate factor, Your Honor, than strength of the mark. Except that to define they're confused, they also had to identify that they recognized the prior mark. Right. But what matters is public, according to the prior panel, that you have to show confusion among an appreciable number of consumers. And, you know, this just — that's law in this circuit generally. You can find that elsewhere other than in this prior opinion. The excessive advertising and public recognition over the past 25 years have established plaintiff's mark as a strong mark in the industry. There's no evidence of that? Not by virtue of consumer association, no. Right. There's extensive advertising. You can see that there's evidence of that. True? Right. And that was before the Court previously. Right. It's not definitive. And you claim, then, that there's no evidence that it's a strong mark in the industry. By virtue of consumer association or recognition, yes. Well, there was testimony that it was a strong mark in the industry, which your argument apparently is that it failed as a matter of law. No, Your Honor. There was some testimony to the effect that within the small business segment of the directed that this was a strong mark. And you'd have to concede that. It's a primary small business, premier small business magazine, isn't it? At page 6 and 7 of our reply, which I'm not going to read, we addressed this issue. The one witness, the expert witness, Virginia Mann, that they produced at trial to offer opinion and testimony on the strength issue, she readily admitted on cross-examination by trial counsel that she did not do any research on the public association with the word. That isn't what I asked, though. I said, didn't she testify that it was a strong mark in the industry? Yes or no. I think she did, but without the support of any research on public recognition. She testified it was a strong mark in the industry. So that supports at least part of it, the conclusion that it was a strong mark in the industry. You know, excuse me, I'm not sure that Virginia Mann did. I know EMI's own witnesses, their own employees testified about strength of the mark. And on that subject, you know, we've referred the court in our brief to the Filipino Yellow Pages case and other cases that say that evidence from related parties or partial sources possesses very limited probative value. I'm quoting from page 7 of the reply. That's utterly useless to us. I mean, you've got a judge down below who took that into consideration in connection with all the other evidence. Anyway, your time has expired, counsel. Thank you very much. I notice you didn't reserve any, so we'll hear from the other side. Good morning. Mark Finkelstein of Latham & Watkins for the plaintiff, Montefiore Media. As this court has pointed out, we already had a ruling following summary judgment. And I believe the Ninth Circuit's previous opinion was clear, that there were a lot of disputed factual issues, a lot of credibility determinations that had to be decided by a trial. The opinion points out that Mr. Smith himself had moved for summary judgment, which the district court denied. And, of course, the previous panel sustained that. That is, they didn't award Smith summary judgment on anything. So I agree with Your Honor's points that based on that decision, you have to find that Judge Cooper could have ruled in favor of Entrepreneur Media. Good. What's your next point? Let me go on. Strength of the mark. Actually, let me hit one issue. On standard review, just to clarify, I don't think fair use applies here. I think it was Wave. It doesn't apply for a number of reasons. But we did say we thought if it did apply, it was DeNovo. I'd like to correct that. I think if it applies, it's clearly erroneous based on Klantman Manufacturing Company versus ENCO 870S 2nd 512. And I pointed that out to Mr. Peterson before the case, before the argument. What was your best evidence on the strength of the mark? Your Honor, we presented a lot of evidence regarding strength of the mark. In the three years prior to the decision, excuse me, prior to the trial, 1 million new subscribers to the magazine, 13 million unique visitors to the Entrepreneur.com website. In the three years prior to the trial, $46 million in advertising and marketing, including the cost of the magazine itself. In addition, Reba Lasansky appeared on shows like CNNFN, Oprah, and others promoting the brand. EMI received an award from Capel Circulation Report. Mr. Smith's the one that admitted, Judge Thomas, that entrepreneur is well known in the small business community. Certainly, he's not associated with us. Mr. Smith's expert himself admitted that the vast majority of the proper noun uses of entrepreneur are associated with Entrepreneur Magazine. He also admitted when we asked him about these other magazines that have entrepreneur in the title, that he wasn't familiar with any of them other than Entrepreneur Magazine. He didn't know if any of them were being published, what their circulation was, if anybody possibly could be aware of it. And how much of this information was new at trial as opposed to information that was in the record at the time the prior panel considered the summary judgment motion? Well, certainly the new subscribers was new. The 13 million unique visitors was new. The advertising dollars was new. The award from Capel Circulation Report was new. And Mr. Smith's expert's admission regarding the proper noun uses of the word entrepreneur being associated with Entrepreneur Magazine. And to sum up, you say that's sufficient to support the trial court's conclusion this was a strong mark? Absolutely, Your Honor. Okay. Okay. Regarding actual confusion, we presented an abundance of evidence of actual confusion. Witnesses themselves so testified. Yes, Your Honor. And fair use, like I said, we don't think applies here. We think it was waived. We have this in the papers. I know Mr. Peterson didn't talk about this, but certainly the court did not abuse its discretion in awarding damages and an injunction. Also, the previous appeal did not foreclose a broader injunction Entrepreneur Illustrated. What the court said was, as to the magazine, you've proven it as a matter of law. As to other uses, let's let the district court decide that. And she did. If there are no other questions. No, thank you. The case just argued is already submitted. We thank both of you. We'll get your decision as soon as we can. And we'll be in recess until tomorrow morning at 9 o'clock. All rise. The court for this session stands adjourned.
judges: Trott, Rymer, Thomas